IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID HATCHIGIAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| STATE FARM INSURANCE COMPANY, | : | NO. 13-2880 |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                                        January 16, 2014

      Pending before this Court is Defendant State Farm Insurance Company ("State Farm")'s Motion for Summary Judgment. For the following reasons, State Farm's Motion for Summary Judgment is granted in its entirety.

**I.     FACTUAL AND PROCEDURAL HISTORY[1]**

      Plaintiff David Hatchigian ("Hatchigian") is an individual residing in Delaware County, Pennsylvania. (Notice of Removal ¶ 9.) Defendant State Farm is an Illinois corporation with its principal place of business in Illinois. (Id. ¶ 10.)

      **A.    Hatchigian's Policy with State Farm**

      On March 10, 2005, Hatchigian purchased an auto insurance policy from State Farm for his 2005 Ford Econoline van. (Def.'s Mot. Summ. J., Ex. Y, Hatchigian Policy with State Farm ("the policy").) Hatchigian purchased the policy from Ron Cephas Insurance Agency in Wilmington, Delaware while Hatchigian was a resident of Newark, Delaware. (Id.) Under the

---

[1]The statement of facts is compiled from a review of the parties' briefs and the evidence submitted in conjunction with those briefs. To the extent the parties allege a fact that is unsupported by evidence, the Court does not include it in the recitation of facts.

"Settlement of Loss" section of Hatchigian's "No Fault– Coverage P" policy, it reads:

> [State Farm] will pay any amount due:
>
> > a.    to the *insured* or any *person* or organization providing services; [or]
> >
> > ***
> >
> > d.    at our option to a *person* authorized by law to receive such payment.

(Id. at 11 (emphasis in original).)  In completing his application to State Farm, Hatchigian affirmed that "the limits and coverages were selected by [him]." (Id. at 1.)

### B.    Hatchigian's 2007 Settlement with State Farm

On August 7, 2007, Hatchigian filed an action against State Farm asserting that State Farm had acted in bad faith for allegedly failing to pay his lost wages after he was in an auto accident. (Def.'s Mot. Summ. J., Ex. A, Compl. in No. Civ.A.07-3217, ¶¶ 6–18.)  In his complaint, Hatchigian claimed he was entitled to compensation under the "Loss of Earnings" section of his "No Fault– Coverage P" policy with State Farm. (Id. ¶ 5.)

On October 22, 2009, the parties appeared before then-Magistrate Judge Felipe Restrepo for a settlement conference. (Def.'s Mot. Summ. J., Ex. D, Docket Rep. No. Civ.A.07-3217.)  At that time, Hatchigian's counsel was Raymond Quaglia ("Quaglia"). (Id.)  The next day, on October 23, 2009, the parties settled the case for $30,000 in exchange for Hatchigian signing an "Indemnifying Release." (Def.'s Mot. Summ. J., Ex. F, Indemnifying Release.)  On or about October 30, 2009, Quaglia delivered the release to State Farm, which bore the signatures of both Hatchigian and Quaglia. (Id.)  On December 2, 2008, State Farm drafted a check for $30,000 payable to "David Hatchigian & Raymond J. Quaglia PC, His/Her Attorney." (Def.'s Mot.

Summ. J., Ex. G, First Transmittal Letter and Settlement Check.)  The next day, State Farm hand-delivered the check with an accompanying transmittal letter to Quaglia at his office in Philadelphia.  (Id.)

On December 4, 2009, Quaglia deposited the entire $30,000 into an account at United Savings Bank ("USB").  (Id.)  On December 15, 2009, Quaglia sent a check for $16,500 to Hatchigian.  (Def.'s Mot. Summ. J., Ex. L, Transmittal Letter and Check from Quaglia to Hatchigian.)  In an accompanying letter, Quaglia explained to Hatchigian how he arrived at the $16,500 figure:

> From the total recovery of $30,000.00, (see copy of check attached), I deducted $10,000 as our fee.  From the $20,000.00 balance, I have held $3,500.00 to cover the deposition transcription costs being incurred and paid by me in [another matter].

(Id.)  Three days later, Hatchigian sent Quaglia a letter in response accusing Quaglia of having "usurped funds from a settlement by improperly endorsing a settlement check" and demanded that Quaglia "forward all monies related to the settlement within ten days— an amount of $13,500."  (Def.'s Mot. Summ. J., Ex. P, Hatchigian-Quaglia Correspondence.)  On January 12, 2010, Quaglia responded in a letter that, "You authorized me to sign your name to the check so it could be promptly deposited and distributed within 5 days as per our agreement."  (Id.)

**B.     Hatchigian's Affidavit of Forgery to State Farm**

Sometime on or before February 1, 2010, Hatchigian contacted State Farm's "Finance, Planning & Analysis Department" and told State Farm that he had not authorized Quaglia to endorse the $30,000 check it had issued and that Quaglia had illegally forged his signature.  (Def.'s Mot. Summ. J., Ex. I, Affidavit of Forgery.)  On February 1, 2010, State Farm sent

3

Hatchigian a letter explaining how to fill out the attached "Affidavit of Forgery" form and where to mail the completed form.  (Def.'s Mot. Summ. J., Ex. H, State Farm Letter to Hatchigian.)  On February 8, 2010, Hatchigian swore his affidavit stating that "unknown" had forged his unauthorized endorsement on the $30,000 settlement check.  (Affidavit of Forgery.)

Upon receipt of Hatchigian's affidavit, State Farm sent a letter to its bank, Bank of America, and requested that it "process" Hatchigian's affidavit and credit its account $30,000.00.  (Def.'s Mot. Summ. J., Ex. J, Letter to Bank of America.)  Bank of America then issued a Collections Letter to Quaglia's bank, USB, requesting that it draft a check for $30,000.00 payable to "Bank of America Collections" because of a "[n]otice of a claim for breach of warranty" due to a forged endorsement.  (Def.'s Mot. Summ. J., Ex. K, USB Check and Correspondence.)  On March 8, 2010, USB drafted and sent a check for $30,000.00 to Bank of America.  (Id.)

Additionally, after receiving of Bank of America's notice of a forged endorsement, USB placed a hold on Quaglia's business account.  (Def.'s Mot. Summ. J., Ex. L, Quaglia Letters to Bank of America.)  On March 1, 2010, Quaglia sent a letter to Bank of America, requesting that it "withdraw your hold order" because the check had been "payable to me as well as Mr. Hatchigian" and that "distribution of the proceeds was made in due course."  (Id.)  Days later, Quaglia followed up with another letter to Bank of America, attaching a copy of the letter and $16,500 check that he had drafted for Hatchigian which he said "conclusively proves that Mr. Hatchigian lied under oath and the affidavit you published that led to my bank withholding $30,000.00 of my money is based on a fraudulent affidavit submitted by you."  (Id.)  Quaglia copied Hatchigian on his correspondence to Bank of America.  (Id.)

On March 6, 2010, after reading Quaglia's letter, Hatchigian sent his own letter to State Farm in which Hatchigian reiterated that his affidavit was "true and correct related to Mr. Quaglia signing my name" and that his signature endorsing the check was "bogus." (Def.'s Mot. Summ. J., Ex. O, Hatchigian Letter to State Farm.) However, Hatchigian also admitted that "Mr. Quaglia did send me $16,500." (Id.)

      C.      **State Farm's Drafting of New Checks and Ensuing Litigation**

On March 29, 2010, State Farm sent a letter and two checks to Quaglia. (Def.'s Mot. Summ. J., Ex. R, Second Transmittal Letter and Settlement Check.) As State Farm explained in the letter:

> Per our telephone conversation today, enclosed please find a draft in the amount of $16,500.00 which represents reimbursement for the overpayment amount taken out of your account. State Farm has received the documentation you provided which supports Mr. Hatchigian was given a check by you in the amount of $16,500.00.
>
> Also enclosed please find a draft made payable to you and David Hatchigian in the amount of $13,500.00 for the remaining balance of the $30,000.00 settlement which was originally issued to you on 12-2-09.

(Id.) State Farm's check for $13,500.00 was payable to "David Hatchigian & Raymond J. Quaglia PC, His/Her Attorney." (Id.) State Farm copied Hatchigian on its letter to Quaglia. (Id.)

On April 8, 2010, Quaglia filed a complaint against Hatchigian in the Court of Common Pleas of Philadelphia County for claims of defamation stemming from the affidavit of forgery. (Def.'s Mot. Summ. J., Ex. S, Quaglia Complaint.) On April 20, 2010, Quaglia deposited the check for $13,500 payable to "David Hatchigian & Raymond J. Quaglia PC, His/Her Attorney" into his account at USB. (Second Transmittal Letter and Settlement Check.) On June 10, 2010,

5

Hatchigian filed a counterclaim against Quaglia for failing to pay him $13,500 from his $30,000 settlement. (Def.'s Mot. Summ. J., Ex. T, Hatchigian Counterclaim.) At that point in the Quaglia matter, Hatchigian was represented by an attorney selected and provided pursuant to an insurance policy with Travelers Insurance ("Travelers"). (Def.'s Mot. Summ. J., Ex. U, Quaglia v. Hatchigian Findings of Fact and Conclusions of Law ("Quaglia Findings") ¶ 22.)

After an arbitrator awarded Quaglia $18,500 in damages, Hatchigian appealed to the Court of Common Pleas of Philadelphia County for a trial *de novo*. (Id. ¶¶ 4–5.) On November 28, 2011, counsel informed the court that the parties had reached a settlement and subsequently filed a "Praecipe to Settle, Discontinue, and End" ("an SDE"). (Id. ¶¶ 7–9.) On January 3, 2012, Hatchigian filed a *pro se* petition to strike the SDE. (Id. ¶ 11.)

On April 17, 2013, the Philadelphia Court of Common Pleas held a hearing on Hatchigian's petition. (Id. ¶ 17.) As of that hearing, the funds that Hatchigian received as consideration for settling his counterclaim against Quaglia were being held in an attorney escrow account. (Def.'s Mot. Summ. J., Ex. N, Quaglia Notes of Testimony, April 17, 2013, 89:12–23.)

On August 8, 2013, in an extensive memorandum of his findings of fact and conclusions of law, Judge William Manfredi found that "[a]lthough his consent was not required under the terms of the insurance policy [with Travelers], Hatchigian agreed to the settlement of Quaglia's claims against him, and gave [his counsel] consent to settle those claims on November 23, 2011." (Quaglia Findings ¶ 38.) Accordingly, Judge Manfredi denied Hatchigian's petition. (Id. at 12.) Hatchigian has since filed an action against Travelers and counsel who represented him in the matter against Quaglia. (Def.'s Mot. Summ. J., Ex. AA, Hatchigian Complaint Against Travelers, et al.)

6

D.   **Procedural History of the Present Case**

Hatchigian initiated the present litigation by filing a complaint *pro se* on April 19, 2013 in the Philadelphia Court of Common Pleas.  Hatchigian brings six causes of action against State Farm: (1) a claim seeking a declaratory judgment that, under its policy, State Farm is obligated to pay all settlement proceeds to the insured; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) a violation of the Pennsylvania Insurance Bad Faith Statute, 42 Pa.C.S. § 8371; (5) negligence; and (6) unjust enrichment.

On May 23, 2013, State Farm removed this case from the Philadelphia Court of Common Pleas to federal court.  After some initial motion practice, State Farm filed the pending Motion for Summary Judgment on November 5, 2013.  Hatchigian filed his Response in Opposition to State Farm's Motion on November 25, 2013.  The Motion is now ripe for review.

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence,

and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "There must . . . be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." Arbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994), abrogated on other grounds, Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231 (3d Cir. 1999).

### III. DISCUSSION

For purposes of simplicity and organization, the Court will address Hatchigian's claims against State Farm out of the order in which he alleges them in his Complaint.

### A. Hatchigian's Negligence and Pennsylvania Insurance Bad Faith Statute Claims are Barred by the Statute of Limitations.

Hatchigian claims that in drafting a check payable to both himself and Quaglia, State Farm was negligent (Count 5) and violated the Pennsylvania Insurance Bad Faith Statute (Count 4). Under the undisputed facts of this case, each of these claims is barred by the statute of limitations.

Turning first to Hatchigian's negligence claim, under 42 Pa.C.S. § 5524, any "action or proceeding to recover damages for injury to person or property which is founded on *negligent*, intentional, or otherwise tortious conduct" must be brought within two years. 42 Pa. Cons. Stat. § 5524(7) (emphasis added). In Pennsylvania, "the running of the applicable statute of limitations" begins when "the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000) (citing Pearce v. Salvation Army, 674 A.2d 1123, 1125 (Pa. Super. 1996)).

Here, Hatchigian was aware or should have been aware of State Farm's alleged negligence when State Farm copied him on its March 29, 2010 letter to Quaglia explaining that it had drafted a check for $13,500 payable to both him and Quaglia. (State Farm Letter and Check to Quaglia.) Hatchigian did not bring this action against State Farm until April 19, 2013, well over two years later. Hatchigian's negligence claim is therefore time-barred under Pennsylvania's statute of limitations for negligence actions.[2] Accordingly, the Court will grant

---

[2] In his Response in Opposition to State Farm's Motion, Hatchigian advocates for an application of Delaware's three-year statute of limitations for "negligent misrepresentation" actions, as his contract with State Farm was purchased from a Delaware insurance agent while Hatchigian himself was a resident of Delaware. Even if the Delaware three-year statute of

9

summary judgment to State Farm on Hatchigian's claim of negligence.

As to Hatchigian's claim that State Farm violated the Pennsylvania Insurance Bad Faith Statute, 42 Pa.C.S. § 8371, the Supreme Court of Pennsylvania has held that an action brought under this statute to be "a statutorily-created tort action" and therefore "subject to the two-year statute of limitations under 42 Pa.C.S. § 5524." Ash v. Cont'l Ins. Co., 932 A.2d 877, 885 (Pa. 2007). Here, Hatchigian alleges that State Farm violated the Pennsylvania Insurance Bad Faith Statute when it drafted a check payable to both Hatchigian and Quaglia on March 29, 2010. Hatchigian did not bring his claim against State Farm until April 19, 2013, over three years after the alleged violation. Accordingly, the Court will grant summary judgment to State Farm as to Hatchigian's claim that it violated the Pennsylvania Insurance Bad Faith Statute.

### B.  An Unjust Enrichment Claim is Inapt in the Present Case.

In Count 6 of his Complaint, Hatchigian brings a cause of action against State Farm for unjust enrichment. As a matter of law, Hatchigian's claim of unjust enrichment against State Farm is inapt under the undisputed facts of this case.

In Pennsylvania, a claim for unjust enrichment is "an action based on a contract implied at law[.]" Sevast v. Kakouras, 915 A.2d 1147, 1152 (Pa. 2007) (citing Cole v. Lawrence, 701 A.2d 987, 989 (Pa. Super. 1997)). To successfully plead a claim of unjust enrichment, a plaintiff must prove that: (1) plaintiff conferred a benefit on defendant; (2) defendant appreciated the benefit; (3) defendant's acceptance and retention of the benefit is such that it would be inequitable for defendant to retain the benefit without payment for its value. Stoeckinger v.

---

limitations for "fraudulent misrepresentation" were the appropriate statute of limitations to apply in this case, Hatchigian's claim would still be time barred, as it was filed more than three years after State Farm's letter of March 29, 2010.

Presidential Fin. Corp. of Del. Valley, 948 A.2d 828, 833 (Pa. Super. Ct. 2008) (quoting Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. 1993)).

Here, Hatchigian claims that after he paid "substantial premiums" to State Farm, State Farm then "diverted the settlement proceeds belonging to [him]," and that for this reason "State Farm has been unjustly enriched at [his] expense." (Compl. ¶¶ 45–46.) However, in asserting his claim of unjust enrichment, Hatchigian demonstrates why an unjust enrichment claim is not applicable against State Farm. In stating that State Farm "diverted the settlement proceeds" to Quaglia, Hatchigian points out that it was actually Quaglia who was unjustly enriched in this case, not State Farm. As such, Hatchigian cannot show that State Farm has appreciated, accepted, or retained the benefit at issue in this case, and thus cannot prove his claim for unjust enrichment.[3] Accordingly, the Court will grant summary judgment to State Farm on Hatchigian's claim of unjust enrichment.

C. **Declaratory Relief is not Warranted in the Present Case.**

In Count 1 of his Complaint, Hatchigian claims that he is entitled to a declaratory judgment that State Farm's policy imposes on it a duty to pay all settlement proceeds to the insured. Under the federal Declaratory Judgment Act and the binding case law interpreting it, Hatchigian is not entitled to declaratory relief.[4]

---

[3] In the Complaint, Hatchigian attempts to construe his unjust enrichment claim as one in which he conferred the benefit of his premiums on State Farm and that State Farm has appreciated, accepted, and retained the premiums such that it would be inequitable for State Farm to retain his premiums without payment for their value. For reasons that are more fully discussed in the section addressing Hatchigian's breach of contract claim, Hatchigian cannot show that State Farm was unjustly enriched by his payment of premiums.

[4] When Hatchigian filed his Complaint in the Philadelphia Court of Common Pleas, he sought declaratory relief under the Pennsylvania Declaratory Judgments Act, 42 Pa.C.S. § 7532.

Under the federal Declaratory Judgment Act:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The Third Circuit has instructed that when deciding whether to grant a declaratory judgment under this Act, the court should consider: "(1) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies." Terra Nova. Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1224–25 (3d Cir. 1989) (quoting Interdynamics, Inc. v. Wolf, 698 F.2d 157, 167 (3d Cir. 1982) (internal citation omitted)).

Here, the Court notes that the fourth factor, "the availability and relative convenience of other remedies," has particular bearing on the present case. In seeking the settlement proceeds at issue in this litigation, Hatchigian has also vigorously pursued relief through other remedies. Not only did he file a claim of conversion against Quaglia in the Philadelphia Court of Common Pleas, but he has also filed a separate action in the same court against both the former counsel who represented him in the matter against Quaglia and the insurer who selected and provided counsel. To that end, Hatchigian has remedies that are readily available and relatively

---

Now that this case has been removed to federal court, and "because an action for declaratory judgment is procedural in nature and purpose, a federal court exercising diversity jurisdiction over such an action must follow federal procedural rules" and apply the federal Declaratory Judgment Act, 28 U.S.C. § 2201. Eidelman v. State Farm Fire and Cas. Co., No. Civ.A.10-2578, 2011 WL 198501, at *1 n.2 (E.D. Pa. Jan. 19, 2011) (citing Munich Welding, Inc. v. Great Am. Ins. Co., 415 F. Supp. 2d 571, 574 (W.D. Pa. 2006)).

convenient to compensation for his claimed loss such that he is not entitled to a declaratory judgment in this matter. Accordingly, the court will grant summary judgment to State Farm as to Hatchigian's claim for declaratory relief.

> **D.     In Pennsylvania, Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing Merge into Claims for Breach of Contract.**

In Count 3 of his Complaint, Hatchigian brings a cause of action against State Farm for breach of the implied covenant of good faith and fair dealing. Hatchigian brings this cause of action independent of his claim against State Farm for breach of contract (Count 2).

In Pennsylvania, there is extensive authority holding that there is no separate cause of action for a breach of the implied covenant of good faith and fair dealing independent of a breach of contract claim. See Hudgins v. Travelers Home and Marine Ins. Co., No. Civ.A.11-882, 2013 WL 3949208, at *5 (E.D. Pa. Jul. 31, 2013) ("the claim for breach of the implied covenant of good faith and fair dealing is subsumed by the breach of contract claim[.]"); Cummings v. Allstate Ins. Co., 832 F. Supp. 2d 469, 473 (E.D. Pa. 2011) ("a breach of the covenant of good faith is nothing more than a breach of contract claim and . . . separate causes of action cannot be maintained for each, even in the alternative") (quoting JHE, Inc. v. Se. Penn. Transp. Auth., No. 1790, Nov. Term 2001, 2002 WL 1018941, at *7 (Pa. Ct. Comm. Pl. May 17, 2002)); Zaloga v. Provident Life and Acc. Ins. Co. of Am., 671 F. Supp.2d 623, 631 (M.D. Pa. 2009) ("a breach of the implied covenant of good faith and fair dealing merges with a breach of contract claim") (citing Meyer v. Cuna Mut. Grp., No. Civ.A.03-602, 2007 WL 2907276 at *13–14 (W.D. Pa. Sept. 28, 2007)).

Until the Supreme Court of Pennsylvania holds otherwise or the General Assembly enacts

a statute creating an independent cause of action, Hatchigian's claim for breach of the implied covenant of good faith and fair dealing merges into his claim for breach of contract. Accordingly, the Court will grant summary judgment to State Farm as to Hatchigian's claim that it breached the implied covenant of good faith and fair dealing.

### E. State Farm did not breach its contract with Hatchigian

Hatchigian's remaining count against State Farm is a cause of action for breach of contract (Count 2). Looking at the plain and unambiguous meaning of the applicable language in the policy, State Farm did not breach its contract with Hatchigian.

In a diversity action, the substantive law of the forum state applies in construing the language of a contract. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 81 (1938). In Pennsylvania, "the construction of an insurance policy is a question of law which must be resolved by the courts." T.H.E. Ins. Co. v. Charles Boyer Children's Trust, 455 F. Supp. 2d 284, 289 (M.D. Pa. 2006) (quoting Hunyady v. Aetna Life & Cas., 578, A.2d 1312, 1313 (Pa. Super. 1990)). The goal for the court in interpreting an insurance contract is "to ascertain the intent of the parties as manifested by the language of the written instrument." T.H.E. Ins. Co., 455 F. Supp. 2d at 289 (quoting Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts & Youngs, P.C., 821 F.2d 216, 220 (3d Cir. 1987) (internal citation omitted)). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." Id.

A term in an insurance policy is ambiguous when "reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning." Id. (quoting Celley v. Mut. Benefit Health & Accident Ass'n, 324 A.2d 430, 434 (Pa. Super. 1974)).

In resolving the ambiguity of a term in an insurance policy, "the Court should adopt the interpretation which, under all the circumstances of the case, ascribes the most reasonable, probable and natural intention of the parties, bearing in mind the objects manifestly to be accomplished."  Id. (quoting Galvin v. Occidental Life Ins. Co. of Cal., 211 A.2d 120, 122 (Pa. Super. 1965)).

Here, Hatchigian claims that State Farm breached its insurance policy with him when, on March 29, 2013, State Farm drafted a settlement check for $13,500.00 payable to "David Hatchigian & Raymond J. Quaglia PC, His/Her Attorney."  (Second Transmittal Letter and Settlement Check.)  In alleging that State Farm breached its policy with him, Hatchigian does not point to a particular provision of his policy with State Farm.

State Farm drafted the check at issue in this case as payment pursuant to a settlement agreement reached in a 2007 matter before this Court between these same two parties.  In that case, Hatchigian brought an action against State Farm claiming that he was entitled to compensation for lost wages under his "No Fault– Coverage P" policy with State Farm.  (Compl. in  No. Civ.A.07-3217 ¶ 5.)  Under that same "No Fault– Coverage P" policy, under the section titled "Settlement of Loss" it reads:

> [State Farm] will pay any amount due:
>
>> a.    to the *insured* or any *person* or organization providing services; [or]
>
> ***
>
>> d.    at our option to a *person* authorized by law to receive such payment.

(Hatchigian Policy with State Farm at 11 (emphasis in original).)  It is an undisputed fact that

Quaglia was Hatchigian's counsel in the 2007 matter between these parties and, as such, was acting as Hatchigian's agent. As Hatchigian's agent, Quaglia was "a person authorized by law to receive such payment." Also, as Hatchigian's counsel, Quaglia was most certainly "a person or organization providing services." Under the plain and unambiguous meaning of the applicable policy language at issue in this matter, Hatchigian provided State Farm contractual authority to draft a check payable to both himself and his counsel Quaglia as "a person authorized by law to receive such payment" and/or "a person or organization providing services." To that end, State Farm did not breach its policy with Hatchigian in drafting a check payable to both Hatchigian and his counsel Quaglia. Accordingly, the Court will grant summary judgment to State Farm on Hatchigian's claim of breach of contract.

### IV.     CONCLUSION

For all of the foregoing reasons, the Court will grant Defendant State Farm Insurance Company's Motion for Summary Judgment against Plaintiff David Hatchigian in its entirety.

An appropriate order follows.